# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 16, 2003 Session

## JACK JAY SHUTTLE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S35,010    Lynn W. Brown, Judge**

---

**No. E2003-00131-CCA-R3-PC**
**February 3, 2004**

---

The petitioner, Jack Jay Shuttle, appeals the Sullivan County post-conviction court's denial of his petition to compel testing of evidence pursuant to the Post-Conviction DNA Analysis Act. Upon review of the record and the applicable law, we reverse the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;
Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Wade V. Davies, Knoxville, Tennessee (on appeal), and Gene G. Scott, Jr., Johnson City, Tennessee (at hearing), for the appellant, Jack Jay Shuttle.

Michael E. Moore, Solicitor General; David H. Findley, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Barry P. Staubus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Following a jury trial in July 1990, the petitioner was convicted of first degree murder and sentenced to life imprisonment. This court upheld the petitioner's conviction on direct appeal. *See* State v. Jack Shuttle, CCA No. 971, 1991 Tenn. Crim. App. LEXIS 343 (Tenn. Crim. App. Apr. 25, 1991). In 1994, the petitioner filed a post-conviction relief petition in which he alleged he received ineffective assistance of counsel at trial and on appeal, and the post-conviction court subsequently denied the petition. On appeal, this court affirmed the post-conviction court's denial of the petition. *See* Jack J. Shuttle v. State, No. 03C01-9410-CR-00358, 1995 Tenn. Crim. App. LEXIS 737 (Tenn. Crim. App. Sept. 5, 1995).

On December 9, 2002, the petitioner filed a petition pursuant to the Post-Conviction DNA Analysis Act in which he requested blood underneath the victim's fingernails and blood on the

petitioner's jeans be subjected to DNA analysis. *See* Tenn. Code Ann. §§ 40-30-301–313 (2003).[1] Following an evidentiary hearing, the post-conviction court denied the petition, and this appeal ensued.

## I. TRIAL PROCEEDINGS

On direct appeal, this court summarized the facts underlying the petitioner's conviction for first degree murder as follows:

> The victim, Brandi Sims, and the [petitioner] had been dating. The victim was 15 years of age and the [petitioner] was 20 years of age at the time of the homicide. . . . There is evidence that the victim desired to terminate her relationship with the [petitioner] and had informed the [petitioner] of this fact.

> On the night of December 28, 1989, the [petitioner] went to the lobby of the Skate Fun establishment in Sullivan County. He was loitering about the lobby when the victim and a girlfriend entered. At approximately 9:00 o'clock P.M., the victim left the building, wearing her skates, to go to her friend's automobile to obtain a gift that had been left there. The [petitioner] left at the same time for the stated purpose of going home but he went to the automobile of the victim's friend with the victim.

> The parties got into an argument. The [petitioner] testified that the victim attempted to strike him but he grabbed her hand and struck her in the face with his fist, knocking her inside the automobile through the open door. He stated that she came out of the car "cursing" and "still swinging", when he grabbed her by the throat and choked her to death. He testified that he did not claim that the homicide was committed in self-defense.

> After killing the victim, the [petitioner] fled from the scene. He did not seek help for the victim before leaving.

> Prior to December 28, 1989, the [petitioner] made several statements to several people about his intent to kill the victim. . . .

> While the parties were still in the skating rink, the [petitioner] gave the victim a note which stated, "I don't know why I'm writing this letter. I guess it's to say I relly (sic) miss you a lot (sic) and goodby (sic). Those are the last words I evr (sic) wanted to you. . . . I also want to apoligize (sic) for all the bad things I sead (sic). I didn't mean it when I sead (sic) I wish you were dead."

---

[1]Prior to 2003, these statutes were numbered sections 40-30-401–413 (Supp. 2002). The statutes were recodified in the 2003 volume as sections 40-30-301–313. For sake of simplicity, we utilize the 2003 statute numbers.

Dr. William Frederick McCormick . . . testified that he did an autopsy on the body of the victim. Dr. McCormick testified that the victim "died as a result of anoxia which is a kind of fancy way of saying lack of oxygen, lack of air, due to manual strangulation." . . .

Jack Shuttle, 1991 Tenn. Crim. App. LEXIS 343, at **1-4.

## II. PROCEEDINGS REGARDING DNA ANALYSIS

During the hearing, the state informed the post-conviction court that the victim's fingernail clippings were available and had not been previously subjected to DNA testing. The state further informed the court that it had custody of the petitioner's jeans which appeared to have blood on them.

Dr. William Frederick McCormick, who performed the autopsy on the victim, testified that bruises and scrapes found on the victim's hands and body indicated the victim possibly struggled with her assailant. Dr. McCormick stated that although the blood discovered underneath the victim's fingernails possibly belonged to her attacker, it was "more probable" that the blood belonged to the victim as a result of her broken fingernail. The doctor further stated the assailant was probably scratched during the altercation.

Upon examining the evidence, Dr. McCormick testified both the jeans and the fingernail clippings were relatively well preserved and could be subjected to DNA analysis. The doctor was unsure, however, whether DNA material would be recovered.

At the hearing, the petitioner testified that Anthony Booher killed the victim. The petitioner stated he and Booher went to Skate Fun in order for Booher to purchase cocaine. According to the petitioner, the dealers did not know Booher and refused to sell cocaine to him. The petitioner then entered Skate Fun with the victim and some of his friends in order to purchase cocaine while Booher remained in the parking lot. The petitioner stated that prior to entering Skate Fun, he told Booher that he would either bring the cocaine to him or send someone outside with the cocaine. The petitioner said he then purchased cocaine with Booher's money.

The petitioner testified that upon exiting Skate Fun, he heard someone yell and saw Booher on top of the victim. The petitioner stated Booher may have thought the victim possessed the drugs and planned to keep them. The petitioner further stated he "kneed" Booher in his mouth, and Booher fled. The petitioner said he attempted to aid the victim, yelled for help, became frightened, and fled.

The petitioner testified that when he was arrested, he had a scratch on his arm which he received earlier that day from his mother's rose bush. The trial testimony of the nurse at the jail indicated she removed a thorn from his arm several days after the homicide.

The petitioner stated that at trial and during his prior post-conviction relief hearing, he testified he killed the victim and, thus, lied under oath on both occasions. He further stated that

when he first met with trial counsel, he informed trial counsel of the version of the events to which he testified at the present hearing. According to the petitioner, approximately five weeks prior to trial, trial counsel informed him that he had little evidence to support his defense that a third party killed the victim and further explained the lesser offenses of first degree murder to him. The petitioner stated he became frightened and informed trial counsel that he killed the victim in an attempt to secure a conviction for a lesser offense. He stated he did not provide defense counsel with Booher's name due to his fear that Booher would harm his family.

Trial counsel testified the petitioner initially told him that a third party had committed the offense. The petitioner informed trial counsel that he exited Skate Fun a short time after the victim and observed the victim being attacked in the parking lot. The petitioner further informed trial counsel that when he intervened, the assailant fled. Trial counsel further stated that based upon information provided by the petitioner and a private detective, he located the alleged assailant at a rehabilitation center in Virginia. However, before trial counsel could interview the individual, the petitioner provided him with a different version of the events in which he admitted killing the victim during an argument.

### III. POST-CONVICTION COURT'S FINDINGS

In denying the petition, the post-conviction court found the evidence which the petitioner requested be tested was still in existence and had not been previously subjected to DNA analysis, and the application for analysis was not made in order to unduly delay execution of the sentence. *See* Tenn. Code Ann. §§ 40-30-304(2)–(4), -305(2)–(4) (2003). The post-conviction court noted its decision would be "clear cut if [the petitioner] had told his lawyer what he's told the Court today and stuck with it, the DNA analysis would be granted without question." The court declined to accredit the petitioner's testimony at the hearing, finding his explanation regarding his fear of Booher to be untrue and "absolutely incredible."

The court further found that because the petitioner testified at trial that he killed the victim, the results of the DNA analysis were not dispositive under the facts of the case. Accordingly, the post-conviction court found the petitioner failed to establish that a reasonable probability existed that he would not have been prosecuted or convicted had exculpatory DNA evidence been obtained. *See id.* § 40-30-304(1). The court also found the petitioner failed to establish a reasonable probability existed that he would have received a more favorable verdict or sentence as a result of the DNA evidence and then denied the petition. *See id.* § 40-30-305(1) (2003).[2]

### IV. ANALYSIS

The petitioner contends DNA testing of the blood underneath the victim's fingernails and blood on the petitioner's jeans is mandatory. *See id.* § 40-30-304 (2003). Specifically, the petitioner

---

[2]During the hearing, the petitioner argued Tennessee Code Annotated section 40-30-305, which provides the court with discretion in permitting DNA testing, also applied. However, in his appellate brief, the petitioner concedes he is not seeking relief under this section.

maintains the lower court erred in finding Tennessee Code Annotated section 40-30-304(1) was inapplicable under the circumstances of his case.

Pursuant to the Post-Conviction DNA Analysis Act of 2001,

a person convicted of and sentenced for the commission of first degree murder . . . may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

*Id.* § 40-30-303 (2003). This act does not have an applicable statute of limitation. *Id.*

DNA analysis of biological evidence is mandatory if the post-conviction court finds the presence of the following criteria:

(1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

*Id.* § 40-30-304 (2003). Murder is an offense for which DNA analysis is mandatory when the statutory prerequisites have been established. Willie Tom Ensley v. State, No. M2002-01609-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 335, at *7 (Tenn. Crim. App. Apr. 11, 2003).

The post-conviction court is afforded considerable discretion in determining whether to grant a petitioner relief under the Act, and the scope of appellate review is limited. *Id.* at *9. In making its determination, the post-conviction court must consider all the available evidence, including the evidence presented at trial and any stipulations of fact made by either party. *Id.* The lower court may also consider the opinions of this court on direct appeal of the petitioner's conviction or the appeals of the petitioner's prior post-conviction or habeas corpus actions. *Id.*

In the case at bar, the petitioner requests the evidence be tested in order to exonerate him and to determine whether Booher was the assailant. However, the Act only permits "the performance of a DNA analysis which compares the petitioner's DNA samples to DNA samples taken from biological specimens gathered at the time of the offense if all four statutory criteria are met." Earl David Crawford v. State, No. E2002-02334-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 672, at

*8 (Tenn. Crim. App. Aug. 4, 2003), *perm. to app. denied* (Tenn. 2003). In his brief, the petitioner acknowledges that the record does not indicate that a DNA sample has ever been taken from Booher. However, the record does indicate that DNA samples from both the petitioner and the victim are available. Therefore, the present DNA analysis would be limited to showing that the blood did not belong to either the petitioner or the victim.

The petitioner contends the post-conviction court erred in denying his petition based upon his testimony at trial and at his prior post-conviction relief hearing in which he admitted killing the victim. We agree with the petitioner's contention.

In Ricky Flamingo Brown, Sr. v. State, No. M2002-02427-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 528, at **2-3 (Tenn. Crim. App. June 13, 2003), *perm. to app. denied* (Tenn. 2003), the lower court denied a request for DNA testing from a petitioner convicted of the aggravated rape of his daughter. The lower court found that no evidence amenable to DNA testing existed and that even if such evidence existed, there was no reasonable probability that the evidence would have precluded prosecution or conviction because the victim identified the petitioner as the perpetrator. *Id.* at *3. On appeal, a panel of this court upheld the lower court's denial of testing due to the unavailability of evidence suitable for DNA testing. *Id.* at *5. However, Judge Tipton wrote a separate concurring opinion expressing his concern regarding the lower court's reliance upon the fact that the victim identified the petitioner as the perpetrator to deny testing. *Id.* at **6-7. Judge Tipton noted:

> [T]he Act requires the trial court to assume that the DNA analysis will reveal exculpatory results in the court's determination as to whether to order DNA testing. . . . The Act was created because of the possibility that a person has been wrongfully convicted or sentenced. A person may be wrongly convicted based upon mistaken identity or false testimony. Thus, the fact that the victim identified the petitioner as the perpetrator should not provide a basis for denying testing.

*Id.* at *7.

We conclude Judge Tipton's analysis applies to the case at bar, which involves a petitioner who essentially contends he was wrongly convicted at trial where he gave false incriminating testimony. Of particular importance is the fact that the petitioner initially informed trial counsel that a third party committed the offense in a manner consistent with his testimony at the hearing. Although at trial the petitioner admitted to killing the victim, we note that unlike similar statutes in other states, Tennessee's statute "does not explicitly require that the petitioner show that identity was an issue" in order for a court to order DNA testing. William D. Buford v. State, No. M2002-02180-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 370, at *8 (Tenn. Crim. App. Apr. 24, 2003), *perm. to app. denied* (Tenn. 2003).

In summary, for purposes of the Act, we must assume that DNA testing will reveal exculpatory evidence; namely, that the blood underneath the victim's fingernails and the blood on the petitioner's jeans was not the blood of either the victim or the petitioner. In the event DNA testing reveals such findings, the test results would be inconsistent with the state's theory at trial,

-6-

inconsistent with the petitioner's trial testimony, consistent with the petitioner's first statement to his trial counsel, and consistent with the petitioner's latest testimony. Thus, we conclude the petitioner has established a reasonable probability that he would not have been prosecuted or convicted if exculpatory DNA evidence had been obtained. *See* Tenn. Code Ann. § 40-30-304(1) (2003).

In the recent case of <u>Carl E. Saine v. State</u>, No. W2002-03006-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 1135, at *6 (Tenn. Crim. App. Dec. 15, 2003), a petitioner convicted of assault and rape requested spermatozoa discovered on the victim's torn panties be submitted for DNA testing. The petitioner argued that although he assaulted the victim, he left the victim while she was still unconscious, and a third party could have then entered the room and committed the rape. *Id.* at *10. The lower court denied DNA testing finding that despite any favorable DNA evidence, the petitioner would have still been prosecuted and convicted. *Id.*; *see* Tenn. Code Ann. § 40-30-304(1) (2003). On appeal, a panel of this court upheld the lower court's denial based upon the fact that the victim identified the petitioner as her rapist; she gave detailed testimony regarding the rape; and other evidence corroborated her testimony regarding the rape. <u>Carl E. Saine</u>, 2003 Tenn. Crim. App. LEXIS 1135, at **10-11. This court further noted that no evidence was presented at trial that the victim wore the panties containing spermatozoa at any time during or after the rape, and, therefore, the evidence was not a primary factor in proving the petitioner's guilt. *Id.* at **11-12.

However, <u>Carl E. Saine</u> is distinguishable from the case at bar. Unlike the petitioner in <u>Carl E. Saine</u> who admitted to assaulting the victim but denied raping her, the petitioner in the case at bar now denies ever harming the victim. Furthermore, while the petitioner in <u>Carl E. Saine</u> theorized that a third party could have possibly raped the victim after he assaulted her and left her, the petitioner in the present case gave a detailed explanation of the events, which he initially described to his trial counsel. Finally, while the evidence to be tested in <u>Carl E. Saine</u> could not be directly linked to the rape, the record in the present case indicates the evidence to be tested will likely be linked to the commission of the offense.

Therefore, if we assume DNA testing would reveal the blood underneath the victim's fingernails and on the petitioner's jeans was not the blood of the victim nor the petitioner, the petitioner has shown a reasonable probability that he would not have been prosecuted or convicted with this favorable DNA evidence. Accordingly, we reverse the judgment of the post-conviction court and remand for DNA testing.

_____
JOE G. RILEY, JUDGE